**Mattie Hanes, Appellee, v. Illinois Central Railroad Company, Appellant.**

EVIDENCE—*how preponderance determined.* While a jury should not wilfully disregard the testimony of witnesses and should take the number of witnesses into consideration, with all the other facts and circumstances in evidence, in determining where the preponderance lies, yet it is for them, who see the witnesses upon the stand and hear their testimony, to determine in case of conflict, where the truth lies.

Action in case. Appeal from the Circuit Court of Marion county; the Hon. S. L. DWIGHT, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed February 11, 1910. Rehearing denied March 23, 1910.

208     APPELLATE COURTS OF ILLINOIS.

Hanes v. Illinois Cent. R. Co., 155 Ill. App. 207.

W. W. BARR, CHARLES E. FEIRICH, for appellant; W. S. HORTON, of counsel.

C. H. HOLT, NOLEMAN & SMITH, and W. F. BUNDY, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

The declaration in this case contained three counts, the first of which charged that on May 10, 1906, appellant was possessed of and operating a certain railroad, extending through the county of Marion and through a certain other place known as W. C. & W. crossing near Pinckneyville, Illinois, and elsewhere in said state, to the station of Groves on said railroad; that appellee, an infant 14 years of age, became a passenger at said W. C. & W. crossing, to be carried to the station of Groves and paid her fare; that she was directed by one of appellant's servants to take a certain coach which she did; that when she reached Pinckneyville, appellant negligently switched said coach onto another division of said railroad without any notice or warning to appellee, and she was negligently and carelessly carried about one and a half miles beyond said last named station, when she was informed by the conductor that she was on the wrong train; that she was, by the defendant, then wrongfully and carelessly requested to alight from said train, and forced to walk back to said station of Pinckneyville, in the night time, over a long and dangerous trestle, past certain coal mines, through a dark and dangerous part of said village of Pinckneyville, and to carry a heavy grip, weighing 50 pounds; that thereby she was placed in a position of great danger and by reason of her youth, was greatly terrorized and frightened and her strength overtaxed; that she fell through said trestle and injured her limb and back; that she suffered and will continue to suffer great pain and mental anguish and that her nervous system was permanently impaired and injured.

The second and third counts are substantially the same as the first, except that the third charges the conductor wrongfully and negligently caused appellee to alight from the train, at a dark and dangerous place. The general issue was filed and the trial resulted in a verdict and judgment in favor of appellee, for $1,250.

On May 10, 1906, appellee, then between 14 and 15 years of age, as it appears from the proofs, started over the Wabash, Chester & Western Railroad Company, from Mt. Vernon to her home at Groves, Illinois. This was her first trip alone, although she had previously been over the road with her parents. To reach her home, it was necessary for her to change cars at a railroad junction, about a mile north of Pinckneyville, where the tracks of the road, on which she started, crossed those of appellant. She arrived at the railroad crossing, known as the W. C. & W. crossing, shortly after seven o'clock in the evening, and bought a ticket over appellant's road for Groves, which is about ten miles south of Pinckneyville. When appellant's train arrived soon afterwards, she boarded it, and at Pinckneyville, the rear coach, in which she was seated, was cut off from the train, which ran to Groves and was attached to another train on what was known as the Eldorado division. When she gave the conductor her ticket, he discovered she was on the wrong train and so informed her. Some conversation took place between them, when the conductor ordered the flagman to stop the train and let her off. The flagman did as ordered, using his lantern to show her out to the ground. The train then passed on, leaving her by the track a mile and a half from Pinckneyville, with a heavy suit case and a can containing flowers. She started down the track, towards Pinckneyville, and was compelled to cross an open trestle, 195 feet long, 20 to 25 feet high with water below, and no foot board to walk on. It was quite dark and she tried to crawl across the trestle, but could not on account of her baggage, and in trying to walk and feel her way across,

she slipped through falling on her suit case, bruising and skinning her foot and limb. At places there were woods along the track and to reach the depot, she had to pass through a portion of Pinckneyville where it was terrifying, if not unsafe for a woman to pass. She finally reached the station at about ten o'clock P. M., very nervous, badly frightened and apparently almost in a state of collapse. At her request the station agent communicated by telephone with her father, and took her to a hotel, where she remained all night. When she reached home the next day, she was suffering with a chill and remained quite sick for three weeks. From that time until the trial, in February, 1909, she had been almost constantly under the care of a physician; had been unable to attend school or discharge her ordinary duties with regularity and her nervous system seems to have been severely and permanently impaired.

The proofs show that she had normal strength and health before taking the trip in question and that her condition was brought about by her having been compelled to walk back to the station at Pinckneyville from the place she was let off the train.

While there is little, if any contest concerning the facts, as above set forth, there is a sharp controversy in the evidence concerning the conditions and circumstances under which appellee came to leave the train. Appellee testified that at the crossing where she got on appellant's train, the porter asked her where she wished to go, that she told him to Groves, and he then instructed her to get on one of the cars and pass through to the one next to it and that she followed his direction. On this point both the porter and the flagman, whose duty it was to assist and look after passengers getting on the train, and ascertain their destination, testified that they did not remember the fact of appellee getting upon the train that night. Appellee also testified that no announcement was made as to the destination of the car she was in, before the train

reached Pinckneyville, while the flagman and porter testified that it was announced by both of them, that the car in which she was riding, went to DuQuoin, Benton and Eldorado and that the Murphysboro and Carbondale car was ahead. No specified announcement was made as to which of the cars went to Groves and even if the announcements were made as claimed by appellant's employes, it does not appear that appellee would have understood from them which car would convey her to her home.

The conductor testified that he discovered appellee was on the wrong train when about a mile out of Pinckneyville; that he did not stop the train at once, but while conversing with her the train ran from a quarter to a half mile further, to a point 50 or 100 feet beyond the trestle; that he told appellee he would take her to DuQuoin and bring her back the next morning; that she would get home just as quick as she would by going back to Pinckneyville; that they were too far out of Pinckneyville to back up and the only chance for her to get back would be to walk; that she said she had to get back to Pinckneyville and would walk if he would stop the train and let her off; that he had no further conversation with her but the train was stopped and the flagman helped her off. The conductor was corroborated by the brakeman who stood by while the conversation took place, and to some extent by a passenger.

On the other hand appellee testified that when the conductor told her she was on the wrong train, she asked him what she should do and he told her either to pay her fare to DuQuoin or get off and asked her which she wanted to do; that she said she did not have any change; that he then said she would have to get off, pulled the bell cord and directed her to the back end of the coach; that the brakeman who stood there with a lantern, directed her back to town; that she had no money.

While a jury should not wilfully disregard the testi-

212    APPELLATE COURTS OF ILLINOIS.

Hanes v. Illinois Cent. R. Co., 155 Ill. App. 207.

mony of witnesses and should take the number of witnesses into consideration, with all the other facts and circumstances in evidence, in determining where the preponderance lies, yet it is for them, who see the witnesses upon the witness stand and hear their testimony, to determine in case of conflict, where the truth lies. Considering all the facts and circumstances in this case, we would not be disposed to disturb the verdict for the reason that the jury found the facts in accordance with the testimony of appellee. But apart from that, if we consider the uncontested evidence in the case, or if it be admitted that the facts regarding the circumstances under which appellee left the train, were wholly as claimed by appellant, yet these facts appear to us to show that the acts of the conductor in stopping the train and letting this young girl off. at the time and place in question, were clearly negligent if not reprehensible. Small wonder that the girl was in a state of nervous collapse when she reached Pinckneyville and it might readily have been anticipated by appellant's employes that even more serious consequences would follow their action, than those which actually resulted.

Complaint is made by appellant that appellee was permitted to prove the physical surroundings along appellant's right of way from the point at which appellee left the train to Pinckneyville, on the ground that the case is not one in which damages can be recovered on account of physical surroundings, and because the evidence differed from the allegations in the declaration. We think the declaration was sufficiently broad to permit, if indeed it did not require, proof of the physical surroundings of the track between Pinckneyville and the place where appellee alighted, and the proof was also competent to show the conditions under which appellee received the injury complained of.

Criticism is made of the three instructions given by the court for appellee. These instructions, however, do not reasonably bear the construction placed upon

them by appellant and they appear to us to state the law, bearing upon appellee's case correctly, while 18 instructions given on behalf of appellant and stating the law most favorably to its side of the case, covered every phase of the defense.

The merits of the case are clearly with appellee. There was no substantial error in the trial of the cause and the damages under all the circumstances of the case, are not excessive.

The judgment of the court below will therefore be affirmed.

*Affirmed.*